**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ELIZABETH RENEE TURNER, | ) | |
| | ) | |
| PLAINTIFF, | ) | **Civ. Action File No. _____** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| VERIFONE, INC., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

Plaintiff Elizabeth Renee Turner ("Plaintiff" or "Ms. Turner") hereby files this Complaint against Verifone Inc. ("Verifone", "Company" or "Defendant"). Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1.      This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for negligent supervision, negligent retention, negligent hiring, intentional

infliction of emotional distress, intentional interference with existing contractual relationships, and intentional interference with prospective contractual relationships.

## JURISDICTION AND VENUE

2.     Ms. Turner's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3.     This Court has pendant jurisdiction over Ms. Turner's claims arising under the laws of the State of Georgia pursuant to 28 U.S.C. § 1367.

4.     This Court is an appropriate venue for all of Ms. Turner's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because all of the parties reside within the Northern District of Georgia, and a substantial majority of events giving rise to Ms. Turner's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

5.     Ms. Turner filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). A true and accurate copy of the Charge is attached hereto as Exhibit "A" and is incorporated herein.

6.     Ms. Turner received a notice of right to sue from the EEOC within ninety (90) days of filing this Complaint and has complied with all other conditions precedent to the institution of this lawsuit. A true and accurate copy of the Notice of the Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

## PARTIES

7.     Ms. Turner is a citizen of the United States and a resident of the State of Georgia. Ms. Turner subjects herself to the Court's jurisdiction.

8.     Ms. Turner was an employee of Defendant at all times material to this Complaint.

9.     Ms. Turner is a female and a member of a protected class under Title VII.

10.    Defendant is a foreign profit corporation registered to conduct business in this state.

11.    Defendant may be served with process through its registered agent, Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, USA.

## STATEMENT OF FACTS

12.    On or around August 4, 2020, Plaintiff begins working at Verifone as an Inside Sales Representative on the Sales team.

13.    Plaintiff's new job at Verifone is the highest paying job she has ever received; she is eager to begin her work and determined to begin building her career.

14.    At all times during her employment, Plaintiff performed exceptionally well in her role as Inside Sales Representative on the Sales team.

15.     Notwithstanding her exemplary performance, on or around January 19, 2021, Plaintiff is placed on a Performance Improvement Plan ("PIP") by her supervisor, James "Jim" Surber ("Mr. Surber"), Vice President of Business Optimization, the day after she returns from taking care of a family medical emergency.

16.     On or around February 8, 2021, Cody Clark ("Mr. Clark"), Inside Sales Representative, begins employment at Verifone on Plaintiff's team. He is immediately accepted by Mr. Surber, so much so, that Mr. Surber refers to him as the son he never had.

17.     All the while, Plaintiff is subject to Mr. Surber's harassment in a way that Mr. Clark never experiences. Mr. Surber:

a)      is condescending to Plaintiff;

b)      pins minimal tasks that he is responsible for, like pulling forecast reports, on Plaintiff when they are not done on time and reprimands her;

c)      diabolically works against all of Plaintiff's work product;

d)      consistently enforces policies on Plaintiff that are not consistent with Company policy;

e)       retaliates for taking time off of work[1]; and

f)       shows favoritism to Mr. Clark over other coworkers, including Plaintiff.

18.     Despite the condescending comments and rude demeanor Mr. Surber has towards her, Plaintiff continues fighting day in and day out to show that she is a good performer with the ultimate goal of prevailing on her PIP.

19.     On or around February 17, 2021, Plaintiff gives a jaw-dropping presentation and is taken off of her PIP.

20.     Notwithstanding being taken off of her PIP, Plaintiff is still subject to Mr. Surber's inappropriate workplace harassment.

21.     Meanwhile, Mr. Clark begins messaging Plaintiff on her work chat during work hours, flirting with her.

22.     On or around February 20, 2021, Mr. Clark invites Plaintiff to meet with him and his friends for drinks. Plaintiff declines noting that he is married. Mr. Clark is persistent in his pursuit of a relationship outside of work with Plaintiff.

---

[1] Verifone has an unlimited Paid Time Off policy. Each employee in the sales department operates under the impression that they are able to take as much Paid Time Off as they'd like, so long as, they perform well. Even after Plaintiff is taken off of her PIP, she is still a victim of Mr. Surber's grief when she takes Paid Time Off. Due to the harassment that Plaintiff must endure from Mr. Surber when she returns from Paid Time Off and the negative impact it has on her work relationship with Mr. Surber, she eventually takes less and less time off, feeling guilty every single time she does.

23.    After enduring Mr. Clark's incessant persistence, Plaintiff begins a relationship with Mr. Clark with the understanding that Mr. Clark is going through a divorce.

24.    On or around May 6, 2021, in preparation for a promotion that he knows he is being offered, Mr. Clark offers Plaintiff $1,000.00 to not mention their relationship to anyone at work for fear that he would not be promoted or potentially terminated. Plaintiff begins to worry about Mr. Clark's intentions and the things that he is saying about her to Mr. Surber.

25.    On or around May 14, 2021, Mr. Clark is promoted to Sales Manager, Plaintiff's direct supervisor. Mr. Surber becomes Mr. Clark's direct supervisor. Plaintiff is relieved that Mr. Surber will no longer be her direct supervisor as she is consistently worried that Mr. Surber will place her back on a PIP or reprimand her work product.

26.    In his new role, Mr. Clark offers Plaintiff a number of new perks including:

a)    Plaintiff will be fed all of the best and highest revenue accounts under his supervision;

b)    Mr. Clark will put Plaintiff in Mr. Surber's good graces;

c)    Plaintiff and Mr. Clark will have excuses to be alone;

d)    Mr. Clark "swear[s] to GOD [Plaintiff] will not get fired"; and

e)      Mr. Clark will do "everything [he] can to make sure [Plaintiff] gets plenty of money…".

27.      On or around May 18, 2021, Mr. Clark continues to promise to feed her the big accounts that she wants and tells her "I obviously want you to have the best accounts so that's what will happen."

28.      On or around May 20, 2021, Plaintiff asks Mr. Clark at the office if she can take over one of her old Manager's high revenue accounts. In response, Mr. Clark mentions if she gives him another world-famous blow job, she can have the account mentioned.

29.      On or around June 2021, recognizing that Mr. Surber's behavior has become a hindrance to her ability to focus on her job, Plaintiff decides to confront Mr. Surber about the way that he treats her in the workplace.

30.      Mr. Clark insists that he sit in on this meeting with Mr. Surber and Plaintiff.

31.      Plaintiff explains to Mr. Surber that his workplace behavior and talking down to her in front other coworkers is unacceptable, all with Mr. Clark in the room.

32.      Mr. Surber assures Plaintiff that he will no longer speak to her in this manner.

33.      Not one day later, Mr. Surber continues to harass and demean Plaintiff in front of other coworkers.

34.     Verifone's yearly sales bonuses are performance based. Each associate is rated 1-5 on performance, with a rating of 1 resulting in the lowest bonus amount and a rating of 5 resulting in the highest bonus amount. This bonus is paid out on or around November 1 of each year.

35.     From the time that Mr. Clark was promoted to Plaintiff's supervisor to the end of Plaintiff's employment, Mr. Clark continually pressures Plaintiff to perform sexual acts for him in exchange for a higher performance rating.

36.     Mr. Clark also holds his well-regarded relationship with Mr. Surber over Plaintiff's head, assuring her that if she performs sexual acts for him, he will continue to speak highly of her to Mr. Surber.

37.     Mr. Clark tells Plaintiff on a number of occasions that Mr. Surber is leaning towards rating Plaintiff a 3 in performance, cutting her November 1 bonus down to 75%.

38.     Many days, Plaintiff reluctantly stays in the office after hours at Mr. Clark's request. After performing sexual acts for him, he notes to Plaintiff that she is definitely getting a performance rating of 5.

39.     Plaintiff is consistently worried that she will not get her full November 1 bonus if she does not do what Mr. Clark asks of her.

40.     Through and including July 2021, Mr. Clark continues to feed Plaintiff deals and help her close them in exchange for sex.

41.     On or around July 18, 2021, Plaintiff is diagnosed with COVID-19 and stays out of the office for additional medical reasons.

42.     In the days following her absence, Plaintiff notices that Mr. Clark is:

a)     not communicating with her as frequently;

b)     talks down to her;

c)     has a short temper with her; and

d)     has a condescending tone in all communications with her.

43.     Plaintiff is bothered by his new communication style and notices that his behavior is almost identical to the way that Mr. Surber treats her. Plaintiff has a difficult time focusing on her job working remote without the support she needs from her supervisor. Plaintiff never goes to Mr. Surber about Mr. Clark's behavior for fear that Mr. Surber and Mr. Clark will collectively retaliate against her.

44.     On or around September 2, 2021, Plaintiff returns to the office and discovers that Mr. Clark has been pursuing other women in the office (specifically messaging via work chat and flirting with coworkers).

45.     On or around September 21, 2021, Plaintiff finally musters up the courage to confront Mr. Clark about his pursuit of other women in the office. Mr. Clark threatens suicide. Plaintiff is at a loss of what to do, but is scared to go to Human Resources ("HR") or Mr. Surber to report Mr. Clark for fear of losing her job.

46.     On or around September 24, 2021, Plaintiff goes out with her high school girlfriends after work for a girl's night. Claire Kelly ("Ms. Kelly"), Vice President of Partnerships at Verifone, is present. Plaintiff hears from Ms. Kelly that her Assistant is having an affair with Mr. Clark.

47.     Plaintiff knows Ms. Kelly's high status in the Company and has been friends with her since seventh grade. Plaintiff has no reason to not believe her. Ms. Kelly reassures Plaintiff in the months following that she is "in [her] corner. Always."

48.     Plaintiff is even more scared to lose her job and knows that if she confronts Mr. Clark, there is no telling what he will say or do. She also knows that if she goes to Mr. Surber about Mr. Clark's behavior, he will side with his friend, Mr. Clark, and potentially retaliate against her in the workplace.

49.     However, scared as she is, she confronts Mr. Clark about his relationship with another coworker. Mr. Clark responds as follows: "I am a dark empty human who has no soul or empathy."

50.      Plaintiff is unsure what to say to this comment other than to threaten to go to HR to report Mr. Clark. Plaintiff realizes that he should never have been promoted to Sales Manager and begins to fear that he is a workplace predator.

51.     Mr. Clark responds with threats to get her fired and ensures her that her life would be "hell" if she reports him. Too terrified to lose her job, Plaintiff does not go to HR.

52.     At every moment Plaintiff is scared that Mr. Surber and Mr. Clark will come to her desk to bully her, speak condescendingly about her around other coworkers, and work against her to get her terminated.

53.     With this hostile work environment lingering over her shoulders, on or around September 26, 2021, Plaintiff contacts Mr. Clark again and threatens to go to HR. Mr. Clark responds, "So, you'll go to HR, I'll get fired, then you will work for Jim or Rico, likely get put on a PIP, and I'll have a job at InComm within a week. Is it really worth that to you?" ……."Honestly, if anything I could tell them about the times we had sex in the building, then we would both get fired." Equally as terrified to lose her job, Plaintiff again, does not go to HR, much less, Mr. Surber.

54.     Additionally, the last thing Plaintiff wants is for Mr. Surber to become her manager again.

55.     As a last resort, on or around September 28, 2021, Plaintiff befriends Mr. Clark's wife, Audrey Clark ("Ms. Clark"), and speaks to her about his issues. Plaintiff finds out that, in fact, Mr. Clark never mentioned divorce to Ms. Clark.

56.     On or around September 29, 2021, Ms. Clark informs Plaintiff that she confronted Mr. Clark about his relationships with his female coworkers.

57.    During their confrontation, Ms. Clark told Plaintiff that Mr. Clark became violent, and Ms. Clark was forced to call the police on him.

58.    Ms. Clark also tells Plaintiff that Mr. Clark has guns in the house, he broke down a door during their confrontation and there is no telling what he is capable of in this state.

59.    Plaintiff is reasonably terrified for her and her family's life. She decides to begin carrying her gun with her wherever she legally can.

60.    On or around September 30, 2021, Plaintiff goes to work in fear that Mr. Clark will follow her, or worse, become violent with her.

61.    That same day, HR finds out about Plaintiff's legal possession of a firearm and holds a meeting with Vanessa Castillo ("Ms. Castillo"), HR Business Partner, Sarah Fitima ("Ms. Fitima"), head of Global Talents, and Mr. Surber to confront Plaintiff.

62.    Plaintiff does not speak up about any of the events that have transpired for fear that Mr. Surber will be unhappy about her speaking ill about his friend, Mr. Clark, and ultimately retaliate against her, or worse, terminate her.

63.    When Mr. Surber is asked to leave the meeting, she still is afraid that Mr. Surber is right outside the door eavesdropping.

64.    Plaintiff is immediately sent home.

65.     Just one day later, on or around October 1, 2021, Ms. Castillo, calls and terminates Plaintiff's employment for having legal possession of a firearm.

66.     In an effort to keep her job, Plaintiff confesses the relationship she had with Mr. Clark as well as the many rendezvouses that he had with other women in the office. She also explains his violent nature.

67.     Ms. Castillo only responds with telling Plaintiff that it is against Company policy to possess a firearm, legal or not, and she would know due to the policy in the Company Handbook.

68.     Plaintiff tells Ms. Castillo that she never received a copy of the Company Handbook and requests her own copy.

69.     Neither Ms. Castillo, nor anyone at Verifone, ever sent Plaintiff a copy of the Company Handbook.

## COUNT I
## Gender Discrimination in Violation of Title VII

70.     Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

71.     As a woman Plaintiff is a member of a group protected by Title VII.

72.     Plaintiff was entitled to or qualified for her position.

73.     As stated herein, Plaintiff suffered an adverse employment action.

74.     Plaintiff was treated less favorably than similarly situated employees who are not members of her protected class.

75.    Defendant willfully and wantonly disregarded Plaintiff's rights, these actions were undertaken in bad faith, and these actions constitute unlawful intentional gender discrimination in violation of Title VII.

76.    As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities.

## COUNT II
### Sexual Harassment in Violation of Title VII

77.    Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

78.    As a woman Plaintiff is a member of a group protected by Title VII.

79.    Plaintiff was subject to unwelcome sexual harassment.

80.    The harassment that Plaintiff endured was based upon sex.

81.    The harassment that Plaintiff endured affected a term, condition, or privilege of employment.

82.    Defendant should have known of the harassment in question and failed to take prompt remedial action, as, upon information and belief, the harassment and unlawful conduct was known to at least two members of Verifone management, including Mr. Clark and Mr. Surber.

83.    Defendant willfully and wantonly disregarded Plaintiff's rights, these actions were undertaken in bad faith, and these actions constitute unlawful intentional sexual harassment in violation of Title VII.

84.    Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant Verifone's discrimination and retaliation against Plaintiff was undertaken in bad faith.

85.    As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities.

## COUNT III
### Retaliation in Violation of 42 U.S.C.S. § 2000e-3(a)

86.    Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

87.    Plaintiff engaged in a statutorily protected expression, including, but not limited to, Plaintiff's reports to Mr. Clark and Mr. Surber regarding Verifone's unlawful and harassing behavior towards her.

88.    Plaintiff suffered an adverse employment action.

89.    There was a causal link between the Plaintiff's protected expression and Verifone's adverse action with respect to her.

90.     Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

91.     As a result, Plaintiff is entitled to both equitable and monetary relief.

## COUNT IV AND V
### Negligent Retention and Negligent Supervision

92.     Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

93.     At all times material to this Complaint, Defendant owed a legal duty of care toward its employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

94.     By and through the conduct, actions, and malfeasance cited above, Defendant breached the above-described legal duties of care that it owed to Plaintiff.

95.     Defendant Verifone knew or reasonably should have known that Plaintiff was being subjected to sexually harassing comments and harassing conduct and the obvious nature of the agents of Defendant's conduct in the workplace; more specifically, Defendant Verifone knew or should have known that Mr. Clark was engaging in unlawful, harassing and threatening behavior with respect to Plaintiff.

96.     Defendant failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment, including, but not limited to, by failing to take any steps to protect Plaintiff from Mr. Clark, Mr. Surber, and any other

employees of Verifone that knew that Plaintiff was suffering from unwanted, unlawful and inappropriate behavior with respect to her and her employment at Verifone.

97.    Because of Defendant's negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNT VI
**Intentional Infliction of Emotional Distress**

98.    Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

99.    Plaintiff has suffered extreme and outrageous conduct at the hands of Defendant.

100.   Defendant and its agents and managers recklessly inflicted emotional distress on Plaintiff.

101.   As a result, Plaintiff suffered severe emotional distress.

102.   The conduct that Verifone or its agents engaged in included, but was not limited to the following: expecting Plaintiff to perform sexual favors for Verifone and/or its agents in exchange for renumeration, threats made by Mr. Clark that he would cause harm to himself if Plaintiff discontinued a sexual relationship with Mr. Clark, Plaintiff's reasonable belief that Mr. Clark possessed firearms and was known to be violent to others, including his spouse, and Verifone's failure to

protect Plaintiff from known harm and threats of violence and sexual misconduct, instead terminating her from the best job she had held for a pretextual reason.

103.   Because of the conduct of Verifone and its agents, Plaintiff suffered damages in the form of significant emotional distress and is entitled to all available compensation under the law to account for this unlawful conduct.

## <u>COUNT VII</u>
### Intentional Interference with Existing Contractional Relationships

104.   Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

105.   Defendant inflicted improper action or wrongful conduct to Plaintiff, without privilege.

106.   Defendant acted purposefully and with malice with the intent to injure Plaintiff.

107.   Defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with Plaintiff, as Plaintiff had established valuable business contacts and relationships while employed by Verifone which were destroyed by Mr. Clark and Mr. Surber, both managers of and agents of Verifone.

108.   Defendant's tortious conduct proximately caused damage to Plaintiff in the form of business relationships lost, business reputation lost, and irreparable harm caused by Verifone and/or its agents.

109.   Because of Defendant's egregious conduct as set forth herein, Plaintiff has suffered damages in the form of accounts lost, business reputation lost, and momentum thwarted due to the misconduct of Verifone and its agents.

## COUNT VIII
### Intentional Interference with Prospective Contractual Relationships

110.   Plaintiff incorporates by reference the preceding paragraphs 12 through 69.

111.   Defendant acted improperly and without privilege.

112.   Defendant acted purposefully and with malice with the intent to injure Plaintiff.

113.   Defendant induced a third party or parties not to enter into or continue a business relationship with Plaintiff.

114.   Plaintiff suffered significant financial injury due to Defendant Verifone's actions against her, including causing businesses and/or individuals not to enter into business relationships with Plaintiff because of the actions of Defendant Verifone and/or its agents to prevent Plaintiff from growing in her role with Verifone, instead terminating her for a pretextual reason.

115.   Defendant not only disrupted the relationship but also eliminated Plaintiff's ability to perform, making the conduct of Verifone and/or its agents particularly egregious.

116.    Because of Defendant's misconduct herein, Plaintiff suffered damages in the form of prospective business and accounts lost which is irreparable to her. As a result, Plaintiff deserves to be compensated to the fullest extent allowable by law.

**WHEREFORE**, Plaintiff demands a Jury Trial and the following relief:

(a)    Enter judgment on all counts in favor of Plaintiff and against Defendant;

(b)    Award compensatory damages, including mental anguish or suffering, in any amount to be determined by the jury;

(c)    Award treble and punitive damages in an amount to be determined by the jury;

(d)    Award injunctive, declaratory or other equitable relief to ensure Defendant ceases further unlawful action similar to what is alleged in the Complaint;

(e)    award costs, interest, and attorneys' fees; and

(f)    award any and all additional relief supportable in law or equity.

Respectfully submitted on this 1st day of April, 2022.

Respectfully submitted,

<u>/s/Matthew A. Hood</u>
Matthew A. Hood
Georgia Bar No. 970801
Stuart & Johnston, LLC
358 Roswell Street
Suite 1140
Marietta, Georgia 30060
Phone: (404) 662-2616
mhood@stuartandjohnston.com

*Attorneys for Plaintiff*